PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-3002

_____

In re: ESSAR STEEL MINNESOTA, LLC; ESML
HOLDINGS, INC.,

Debtors

MESABI METALLICS COMPANY, LLC, F/K/A ESSAR
STEEL MINNESOTA, LLC; CHIPPEWA CAPITAL
PARTNERS, LLC,

Appellants

v.

B. RILEY FBR, INC., F/K/A B. RILEY & CO., LLC

_____

Appeal from the United States Bankruptcy Court
for the District of Delaware
(District Court Nos. 1-16-bk-11626;
18-ap-50833; 1-19-cv-00397)

_____

Argued September 29, 2021

Before: AMBRO, KRAUSE, and BIBAS, <u>Circuit Judges</u>
(Opinion filed:  August 25, 2022)

Jeffrey M. Schlerf
Gray Robinson
1007 North Orange Street
4th Floor, Suite 1278
Wilmington, DE  19801

       Counsel for Debtor

Joshua A. Berman **(Argued)**
White & Case
1221 Avenue of the Americas
New York, NY  10020

Jeffrey M. Schlerf
Gray Robinson
1007 North Orange Street
4th Floor, Suite 1278
Wilmington, DE  19801

       Counsel for Appellant

G. David Dean
Katherine M. Devanney
Andrew J. Roth-Moore
Cole Schotz
500 Delaware Avenue
Suite 1410
Wilmington, DE  19801

       Counsel for Appellee

Joseph M. Pastore, III **(Argued)**
Pastore & Dailey
100 Summit Lake Drive
Suite 120
Valhalla, NY  06905

Counsel for Appellee

_____

OPINION OF THE COURT
_____

AMBRO, <u>Circuit Judge</u>

The scope of a bankruptcy court's jurisdiction narrows after the confirmation of a debtor's restructuring plan.  Parties thus often dispute whether bankruptcy jurisdiction extends to their post-confirmation proceedings.  We review such an issue here, where the Delaware Bankruptcy Court dismissed for lack of jurisdiction an adversary proceeding asking it to interpret and enforce a discharge injunction issued in its prior restructuring plan and confirmation order.  For the reasons below, we hold that the Bankruptcy Court had jurisdiction over the adversary proceeding, and so reverse its decision and remand for further proceedings.

## I.  BACKGROUND

### A.     The Essar Steel/ESML Bankruptcy

ESML Holdings Inc. and Essar Steel Minnesota LLC (together with their debtor-affiliates, "ESML") filed for

3

Chapter 11 bankruptcy in the District of Delaware in July 2016. *In re ESML Holdings Inc.*, No. 16-11626, ECF No. 1 (Bankr. D. Del. July 8, 2016). Nearly a year later, the Bankruptcy Court confirmed ESML's bankruptcy plan of reorganization. Chippewa Capital Partners, LLC ("Chippewa"), as the plan's sponsor, funded ESML's exit from bankruptcy. Of relevance here, the plan and confirmation order (1) discharged all claims against ESML arising before the plan's effective date and (2) enjoined actions against ESML and Chippewa by holders of those claims. The Court retained jurisdiction over "any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 [c]ases or the [p]lan, or (c) that relates to" various other matters stemming from the plan or its confirmation order. J.A. at 103–05; *see also* J.A. at 204. The plan became effective on December 22, 2017, at which time ESML emerged from bankruptcy as Mesabi Metallics Company LLC ("Reorganized Mesabi").

## B.     The Engagement Agreement with B. Riley

During the bankruptcy case, Chippewa sought to acquire ESML. Its affiliate, ERP Iron Ore ("ERPI"), agreed to engage B. Riley & Co., LLC (now known as B. Riley FBR, Inc.) as its exclusive financial advisor to assist the "Company" (defined as ERPI and its affiliates) with the acquisition; B. Riley would receive a "Restructuring Transaction Fee" if ERPI successfully acquired ESML. The parties later amended the agreement to stipulate, among other things, that B. Riley would "provide additional financial advisory services to the Company" in connection with a financing transaction for which B. Riley would receive a success fee of 3–5% on

4

consummation of certain debt financing transactions.[1] J.A. at 342–43.

On December 21, 2017—a day *before* the plan's effective date—B. Riley, ERPI, and Chippewa entered a second amendment (as so amended, the "Engagement Agreement"). Most relevant here, that amendment purported to bind ERPI, Chippewa, *and* the post-effective date Reorganized Mesabi.[2]

## C.     The Fee Dispute and Ensuing Litigation

After a debt financing transaction closed in June 2018, B. Riley sought payment from Chippewa and Reorganized Mesabi (for ease of reference, they are jointly referred to hereafter as simply "Mesabi") of more than $16 million as a success fee under the Engagement Agreement. When Mesabi refused to pay, B. Riley brought two actions to collect: (1) a lawsuit in the United States District Court for the District of Minnesota, *see B. Riley FBR, Inc. v. Chippewa Cap. Partners*

---

[1] The initial agreement and first amendment were signed on behalf of ERPI by Thomas Clarke, as CEO of Chippewa and CEO and controlling owner of ERPI.

[2] Clarke signed the second amendment on behalf of ERPI and Chippewa. A week before the parties entered that amendment, ESML had disclosed that Clarke would become a board member of Reorganized Mesabi, which had yet to come into existence. Following the effective date, he became CEO of that entity.

*LLC*, No. 18-cv-2575 (D. Minn.); and (2) an arbitration filed with the Financial Industry Regulatory Authority ("FINRA").[3]

In response, Mesabi filed in the Bankruptcy Court an adversary complaint for civil contempt, declaratory judgment, and breach of the plan, maintaining the fee had been discharged by the plan and its confirmation order, and B. Riley's actions to collect violated that order. B. Riley moved to dismiss the adversary proceeding, contending, among other things, that its claim was not a pre-effective date claim enjoined by the plan and confirmation order. Mesabi opposed dismissal and asserted that (1) Clarke lacked authority to bind Reorganized Mesabi before the effective date, and (2) even if he had authority, any claim B. Riley may have under the Engagement Agreement arose when the second amendment was entered on December 21, 2017, and so was discharged a day later on the plan's effective date.

The Bankruptcy Court took the matter under advisement and held oral argument, during which subject matter jurisdiction was raised. In a bench ruling the next day, the Court ruled it lacking, thus dismissing the adversary proceeding.

---

[3] The Minnesota action was dismissed with prejudice, and the FINRA arbitration has been stayed pending the outcome of this case. In addition to these actions against Mesabi, B. Riley sued Clarke personally, alleging fraud in connection with the negotiation, execution, and performance of the Engagement Agreement. *See B. Riley FBR, Inc. v. Clarke*, No. 18-cv-2318 (D. Minn.). That case settled following the Minnesota District Court's denial of Clarke's motion to dismiss.

6

Mesabi appealed to the District Court and requested, with the support of B. Riley, the appeal be certified directly to our Court. The District Court, without ruling on the merits, did so on the following issues:

> (1) whether the Bankruptcy Court erred in concluding it lacked subject matter jurisdiction to interpret and implement the Discharge Injunction it issued by prior Confirmation Order and related Plan, and (2) whether the Bankruptcy Court erred in concluding it lacked subject matter jurisdiction to redress contempt of its prior Confirmation Order.

J.A. at 28. We agreed to hear the appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Court's jurisdiction is at issue and is discussed in detail below. The District Court had jurisdiction under 28 U.S.C. § 158(a) to hear bankruptcy appeals "from final judgments, orders, and decrees," and discretionary jurisdiction over appeals "from other interlocutory orders and decrees." *Id.* § 158(a)(1), (3). We have jurisdiction under 28 U.S.C. § 158(d)(2), as the District Court certified the Bankruptcy Court's order for direct appeal, and we authorized that appeal.

We review a bankruptcy court's dismissal for lack of subject matter jurisdiction anew, or *de novo*. *In re W.R. Grace & Co.*, 591 F.3d 164, 170 n.7 (3d Cir. 2009).

7

## III.  ANALYSIS

The parties suggest different approaches for determining whether the Bankruptcy Court had jurisdiction over the adversary proceeding.  B. Riley urges us to follow the lead of that Court and apply the "close nexus" test from *In re Resorts International, Inc.*, 372 F.3d 154, 166–68 (3d Cir. 2004).  Under that test, as the term sounds, if a post-confirmation proceeding lacks a close connection to the implementation of a plan of reorganization or the underlying bankruptcy case, the bankruptcy court lacks jurisdiction.  *Id.*  Mesabi counters that the action was a core proceeding over which bankruptcy courts unequivocally have jurisdiction and to which the close nexus test did not apply.  It also contends the Bankruptcy Court's ruling conflicted with the Supreme Court's declaration that a bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).

### A.    The Contours of Statutory Bankruptcy Jurisdiction

Before delving into the substance of the parties' arguments, we ground our discussion in the broader context of bankruptcy jurisdiction.  The aim of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, is to sort out, as much as possible, a debtor's financial affairs in one place.  *See* Douglas G. Baird, *The Elements of Bankruptcy* 24 (7th ed. 2022).  That place is a bankruptcy court.

Getting there requires a pass-through, however.  Only district courts are directly assigned the authority to rule in bankruptcy matters.  Under 28 U.S.C. § 1334(a)–(b), "district courts shall have original and exclusive jurisdiction of all cases

8

under title 11 [in the Bankruptcy Code]," and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Think of a "case" as the entirety of the process a bankruptcy petition triggers, and a "proceeding" is one of the discrete activities within that process that may include, among other things, contested matters and certain litigated matters (the latter called "adversary proceedings," *see* Fed. R. Bankr. P. 7001). *See generally* 1 Collier on Bankruptcy ¶ 3.01[2] (16th ed. 2022). Fleshed out, district courts may have jurisdiction over four types of title 11 matters (the first of which is not relevant here): "(1) cases under title 11, (2) proceeding[s] arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11." *Resorts*, 372 F.3d at 162 (internal quotation marks omitted). As one court recently explained:

> A case[4] 'arises under' [the Bankruptcy Code] when the cause of action is based on a right or remedy expressly provided by the Bankruptcy Code. Proceedings 'arising in' a case under [the Bankruptcy Code] include matters that, though not explicitly mentioned in the Code, would not exist outside of bankruptcy. Related matters are generally causes of action under state law that are imported into the bankruptcy because of their impact on the size of the debtor's estate, and hence the distribution to the debtor's creditors.

---

[4] "[C]ase" here is used colloquially to refer to a matter of litigation (thus a proceeding) and not a bankruptcy case as intended in the next sentence.

*In re Weiand Auto. Indus.*, 612 B.R. 824, 854 (Bankr. D. Del. 2020) (internal quotation marks omitted) (footnote added).

So where do bankruptcy courts come in? They are adjuncts of district courts who, under 28 U.S.C. § 157(a), may "refer[]" Title 11 cases to bankruptcy judges in their districts. By institutional custom and practice, that is what routinely occurs. Section 157 also sets out the types of proceedings bankruptcy courts may hear. Under that section, they may "hear *and* determine . . . core proceedings," 28 U.S.C. § 157(b)(1) (emphasis added), but in non-core proceedings may only hear and make proposed findings of fact and conclusions of law unless all parties consent, *id.* § 157(c)(1)–(2). These categories overlap with § 1334's four avenues to bankruptcy jurisdiction discussed above. Core proceedings are "[c]ases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11," while non-core proceedings are "'related to' a case under title 11." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3d Cir. 2004). Because the words "arising under," "arising in," and "related to" are so general and indeterminate, courts seek to sift meaning from context. And there we go next.

## B. The Applicability of the Close Nexus Test

The proceeding here (asking the Bankruptcy Court to interpret and implement the discharge injunction it issued in the plan and confirmation order) is a post-confirmation adversary proceeding. While "the scope of bankruptcy court jurisdiction diminishes with plan confirmation, [that] jurisdiction does not disappear entirely." *Resorts*, 372 F.3d at 165. To determine whether a bankruptcy court has jurisdiction over a proceeding, courts must consider whether it falls into one of these core or non-core categories. B. Riley begins with

"related to" jurisdiction and argues that the Bankruptcy Court lacked jurisdiction because Mesabi failed to show a close nexus to the underlying bankruptcy. *See id.* at 166–67. We disagree, as we conclude that test does not apply to Mesabi's claims.

The close nexus test derives from *Resorts*, where our Court addressed the scope of a bankruptcy court's jurisdiction over a post-confirmation adversary proceeding. *Id.* at 159, 161. It involved a malpractice action brought by a litigation trust set up under the debtors' confirmed bankruptcy plan against an accounting firm that had provided the trust with tax advice and accounting services. *Id.* at 158–59. We focused our analysis on whether the Bankruptcy Court had "related to" jurisdiction over the malpractice dispute. *Id.* at 171. In so doing, we declined to decide whether the malpractice action was a core proceeding, because "'related to' jurisdiction is the broadest of the potential paths to bankruptcy jurisdiction." *Id.* at 163.

The key question in *Resorts* thus became whether there existed "a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *Id.* at 166–67. When that happens, such "as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement, retention of post-confirmation bankruptcy court jurisdiction is normally appropriate." *Id.* at 168–69. But the malpractice action in *Resorts* lacked a close connection "to the bankruptcy plan or proceeding and affect[ed] only matters collateral to the bankruptcy process," as "resolution of the[] malpractice claims [would] not affect the estate" and would "have only incidental

11

effect on the reorganized debtor." *Id*. at 169. We thus held the Bankruptcy Court lacked "related to" subject matter jurisdiction. *Id*. at 170–71.

B. Riley contends *Resorts*' close nexus test governs here and disposes of this case. Yet that analytical tool does not extend to core proceedings. *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 260 (3d Cir. 2007). A non-exhaustive list of the categories of core proceedings is set out in § 157(b)(2), and includes "determinations as to the dischargeability of particular debts," "objections to discharges," and "confirmations of plans." 28 U.S.C. § 157(b)(2)(I), (J), (L).

This matter falls within those categories of core proceedings, as Mesabi asked the Bankruptcy Court to interpret the discharge injunction order in its own plan and confirmation order to determine whether B. Riley's fee was discharged in the bankruptcy.[5] Indeed, bankruptcy courts routinely recognize similar requests as core. *See, e.g.*, *Weiand Auto. Indus.*, 612 B.R. at 831, 855 (post-confirmation request to interpret and enforce discharge injunction in plan and confirmation order is a core proceeding under § 157(b)(2)(I)–(J)); *In re G-I Holdings, Inc.*, 580 B.R. 388, 424 (Bankr. D.N.J. 2018) ("Enforcing the discharge injunction is within this

---

[5] B. Riley contests this framing, contending Mesabi "merely asked [the Bankruptcy Court] to enforce the discharge provision, not to interpret it." Appellee Br. at 20. Not so. The nature of this adversary proceeding required the Court to determine the interplay between the Engagement Agreement on the one hand, and the plan and confirmation order on the other—a task that necessarily requires interpretation of those documents.

12

Court's core jurisdiction because it is enforcing this Court's confirmation order based on rights provided in the Code . . . ." (internal quotation marks omitted)); *In re Christ Hosp.*, 502 B.R. 158, 179–80 (Bankr. D.N.J. 2013) (motion to enforce confirmation order is core under § 157(b)(2)(L) & (N) because "[e]nforcement motions relating to such orders are . . . squarely within this court's jurisdiction to hear and determine"); *In re Texaco Inc.*, 182 B.R. 937, 944 (Bankr. S.D.N.Y. 1995) ("There can be no question that a proceeding such as this, to enforce and construe a confirmation order issued by this Court in this case, constitutes a proceeding arising in or related to a case under title 11 . . . [, and so] is a core proceeding under section 157(b)(2)." (internal quotation marks omitted)).

Moreover, executing the second amendment a day before the plan's effective date may hint that Chippewa and ERPI tried to circumvent the bankruptcy process to bind Reorganized Mesabi to a contract containing a major contingency fee before the entity came into existence and could independently review and consent—something that, viewed in this light, we would consider a core bankruptcy proceeding. Our conclusion is further supported by *In re Allegheny Health Education & Research Foundation*, where we determined that an adversary proceeding requesting a bankruptcy court interpret and enforce its own sale orders "was a core proceeding because it required the court to interpret and give effect to its previous sale orders." 383 F.3d 169, 174–76 (3d Cir. 2004); *cf. In re Somerset Reg'l Water Res., LLC*, 949 F.3d 837, 844 (3d Cir. 2020) (dispute asking bankruptcy court to interpret and enforce its own loan order "falls within the bankruptcy court's statutory jurisdiction over core proceedings").

13

B. Riley nonetheless contends "post-confirmation plan and confirmation order disputes can be 'related to' matters that trigger application of the close nexus standard . . . [if they are] not per se 'core' matters falling under the bankruptcy court's jurisdiction."[6]  Appellee Br. at 15–16 (citing *In re Shenango Group, Inc.*, 501 F.3d 338, 342–44 (3d Cir. 2007)).  In *Shenango*, we held that a post-confirmation motion to reopen a bankruptcy case to compel the reorganized debtor to comply with the bankruptcy plan and fully fund benefit increases for certain pensioner-creditors fit "related to" jurisdiction.  501 F.3d at 343–44.  We never addressed whether these proceedings could also qualify as core.  Doing so was unnecessary, as "'related to' jurisdiction is the broadest of the potential paths to bankruptcy jurisdiction, so we need[ed] only [to] determine whether [the] matter [was] at least 'related to' the bankruptcy" to ascertain our authority to decide.  *Resorts*, 372 F.3d at 163.  Because it was related, we had jurisdiction and needed go no further.  Thus *Shenango* only shows post-

---

[6] In a similar vein, B. Riley also cites *In re Wilshire Courtyard*, where the Ninth Circuit applied the close nexus test to hold that "related to" jurisdiction extended to a motion to reopen a bankruptcy case to enforce a discharge order.  729 F.3d 1279, 1287–93 (9th Cir. 2013).  Before applying that test, the Court rejected the reorganized debtor's argument that there was "arising under" (or core) jurisdiction. *Id.* at 1285.  Resolution of the underlying dispute implicated § 346 of the Bankruptcy Code, but, the Court noted, that section did "not provide the substantive rule of decision." *Id.* (citing 11 U.S.C. § 346).  *Wilshire Courtyard* does not apply because it concerned a different Code provision than the one implicated here.  And to the extent that case conflicts with our ruling, we are, in any event, not bound by it.

confirmation proceedings *can* be "related to" matters; it does not go so far as to say they cannot be core.[7] *See also Seven Fields*, 505 F.3d at 260 n.21 ("Our decision in *Shenango Group* does not affect this case[,] as here the issue is not whether the suit is 'related to' the bankruptcy, but, instead, whether it is 'arising in' the bankruptcy.").

The Bankruptcy Court here also had subject matter jurisdiction to redress a possible contempt of its plan and confirmation order. As our sister circuits have explained, "[c]ivil contempt proceedings arising out of core matters are themselves core matters." *In re Ocean Warrior, Inc.*, 835 F.3d 1310, 1318 (11th Cir. 2016) (alteration in original) (quoting *In re Skinner*, 917 F.2d 444, 448 (10th Cir. 1990)); *see also In re White-Robinson*, 777 F.3d 792, 795–96 (5th Cir. 2015) (per curiam) (observing that a contempt order fell "within one of the statutorily-enumerated examples of core proceedings because it was a 'matter concerning the administration of the estate'" (alterations adopted) (quoting 28 U.S.C. § 157(b)(2))).

Because the contempt proceeding here arose out of the previously entered plan and confirmation order—which, as we have explained, themselves implicated explicitly enumerated core proceedings under § 157(b)(2)—it was also a core proceeding over which the Bankruptcy Court had jurisdiction.

---

[7] We likewise note that we do not hold that post-confirmation plan and confirmation order disputes are *per se* core proceedings that confer bankruptcy jurisdiction. Rather, whether a proceeding is core should be decided on a case-by-case basis, and, for the reasons stated above, the facts here make this case a core proceeding.

### C.    The *Travelers* Principle

In addition, the Bankruptcy Court's conclusion that it lacked subject matter jurisdiction over the adversary proceeding conflicted with *Travelers*, where the Supreme Court recognized that bankruptcy courts have jurisdiction to interpret and enforce their prior orders. That decision arose out of the bankruptcy proceedings of Johns-Manville Corporation, a major supplier and manufacturer of asbestos products. *Travelers*, 557 U.S. at 140. After becoming mired in lawsuits for injuries caused by asbestos, it filed for bankruptcy under Chapter 11.

Travelers, as Johns-Manville's primary insurer, had a stake in the outcome of the bankruptcy proceedings. *Id.* In 1986, the Bankruptcy Court issued an insurance settlement order that created a creditor trust to compensate future injured claimants. *Id*. at 141. That order provided that Travelers and other insurers would fund the trust in exchange for an injunction against future actions by injured claimants. *Id*. at 141–42. The settlement order was later incorporated by reference in the Bankruptcy Court's order confirming the reorganization plan. *Id*. at 142.

More than a decade later, Travelers, facing new asbestos-related claims, asked the Bankruptcy Court to enjoin those lawsuits under the 1986 orders. *Id*. at 142–43. The Court issued a clarifying order that the prior orders barred the new actions. *Id*. at 143–45. On appeal, the Second Circuit reversed, holding that the new claims fell outside the scope of the 1986 orders, so the Bankruptcy Court lacked jurisdiction to enjoin the new actions and enter the clarifying order. *Id*. at 146–47.

16

Travelers appealed to the Supreme Court. It reversed and upheld the clarifying order because the Bankruptcy Court properly interpreted its 1986 orders. *Id*. at 148–51. Whether that Court had jurisdiction to issue the clarifying order was "easy," as it "plainly had jurisdiction to interpret and enforce its own prior orders." *Id*. at 151.

We apply that same principle here. Like *Travelers*, Mesabi asked the Bankruptcy Court to enforce the discharge and injunction provisions of its plan and confirmation order after the debtor emerged from bankruptcy. Moreover, where a reorganized debtor seeks to invoke the jurisdiction of the Bankruptcy Court to enjoin third-party lawsuits is arguably *closer* to the underlying bankruptcy than the *Travelers* proceeding, which merely involved a third party's request to enjoin third-party lawsuits.

B. Riley tries to distinguish *Travelers*, arguing it is out of step with our Circuit's "fact-based approach to post-confirmation jurisdiction," and that applying it here "threatens unending jurisdiction." Appellee Br. at 24–25 (quoting *Resorts*, 372 F.3d at 160). We are not persuaded. As we explained, the cases are factually similar in key respects, so we see no reason why the *Travelers* principle should not apply here. Just because the facts do not compel B. Riley's desired result does not mean we have deviated from our precedent. Also not persuasive is its specter of "unending jurisdiction." Bankruptcy courts are quite capable of recognizing and distinguishing the key facts here from other cases. Moreover, a court has wide latitude under 28 U.S.C. § 1334(c)(1) to "permissively abstain from any proceeding over which it has

17

jurisdiction."[8] *Bricker v. Martin*, 348 B.R. 28, 34 (W.D. Pa. 2006). Accordingly, we conclude the Bankruptcy Court "plainly had jurisdiction to interpret and enforce" the discharge and injunction provisions of its plan and confirmation order. *See Somerset Reg'l Water Res.*, 949 F.3d at 845 (internal quotation marks omitted) (recognizing bankruptcy court "plainly had jurisdiction to interpret and enforce" previously issued loan order under *Travelers*).

\* \* \*

In an adversary proceeding, Mesabi asked the Bankruptcy Court to determine whether a fee it purportedly owed B. Riley was discharged under the prior-issued plan and confirmation order, and, if so, to enforce that order against B. Riley. Applying the close nexus test, the Court dismissed the proceeding for lack of subject matter jurisdiction. But as the

---

[8] B. Riley also argues that, even if the Bankruptcy Court did have jurisdiction over the adversary proceeding, we may still affirm its ruling on the ground that the Court had discretion to abstain from hearing the matter. We disagree. While 28 U.S.C. § 1334(c)(1) allows bankruptcy courts to abstain from hearing any proceeding "arising under [the Bankruptcy Code] or arising in or related to a case under [the Bankruptcy Code]," if it is "in the interest of justice, or in the interest of comity with State courts or respect for State law," 28 U.S.C. § 1334(c)(1), permissive abstention decisions are the exclusive domain of the bankruptcy courts and are not reviewable by our Court. *See Seven Fields*, 505 F.3d at 251; *see also* 28 U.S.C. § 1334(d). We thus cannot affirm the ruling of the Bankruptcy Court on this ground. We note, of course, that it may consider abstaining on remand if it is so inclined.

action was a core proceeding under the Bankruptcy Code, the close nexus test is not in play.  Further, dismissal here deviated from the principle the Supreme Court articulated in *Travelers* that a bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders."  557 U.S. at 151.  As jurisdiction exists for this action, we reverse and remand to the Bankruptcy Court for further proceedings.