**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 22-1807

In Re: TE HOLDCORP LLC, Debtor, et al.

Spitfire Energy Group,
                                        Appellant

On Appeal from the United States District Court
For the District of Delaware
(D.C. Civ. Nos. 21-799, 21-780)
District Judge: Honorable Colm F. Connolly

Submitted Under Third Circuit L.A.R. 34.1(a)
January 19, 2023

Before: AMBRO, PORTER, and FREEMAN, *Circuit Judges*.

(Opinion filed: January 26, 2023)

OPINION[*]

---

[*]     This disposition is not an opinion of the full Court and pursuant to 3d Cir. I.O.P. 5.7 does not constitute binding precedent.

FREEMAN, *Circuit Judge.*

This dispute between Spitfire Energy Group, LLC ("Spitfire") and Presidio Petroleum LLC ("Presidio") stems from the Bankruptcy Code § 363 sale to Presidio (the "Sale") of substantially all of the assets of TE HOLDCORP LLC and its affiliates (collectively, "Templar"). The Bankruptcy Court for the District of Delaware entered two orders at issue here: (1) a Sale Order that approved the sale of Templar's assets free and clear of all liens, claims, interests, and encumbrances; approved the assumption and assignment of certain executory contracts and unexpired leases; and granted related relief; and (2) a Confirmation Order that approved the adequacy of the disclosure statement and the prepetition solicitation procedures, and that confirmed the joint prepackaged plan of liquidation under Chapter 11 of the Bankruptcy Code. After the Bankruptcy Court entered both orders, Spitfire sued Presidio in Texas over a contract Presidio had not assumed from Templar. Believing that the Sale and Confirmation Orders foreclosed Spitfire's suit, Presidio moved the Bankruptcy Court to enforce the Orders. The Bankruptcy Court did so and denied Spitfire's subsequent motion for reconsideration. The United States District Court for the District of Delaware affirmed, and Spitfire now appeals.

Because the Bankruptcy Court had jurisdiction to interpret its own orders and properly held that its orders did not preserve any claims Spitfire had against Presidio arising out of the Sale or the non-assumed contract, we will affirm.

2

## I. Factual Background

Templar was an oil and gas company that held several leases in Texas that permitted it to drill for oil and gas. A saltwater disposal system operated by Spitfire improved the leased land. A Master Services Contract ("MSC") between Templar and Spitfire governed the operation of the saltwater disposal system.

Templar filed voluntary bankruptcy petitions under Chapter 11 on June 1, 2020. On the same day, it filed a proposed liquidation plan and a notice that it sought to sell substantially all of its assets under 11 U.S.C § 363. Presidio was one of three bidders for Templar's assets. Prior to the auction, Presidio stated it would not assume the MSC if selected. Presidio and Spitfire engaged in negotiations to reach an agreement regarding the continued operation of the MSC, but these negotiations were not fruitful.

Spitfire raised several objections to Templar's proposed liquidation plan. To resolve them, Templar entered into a stipulation with Spitfire and other entities associated with Spitfire's CEO David Le Norman on July 9, 2020 (the "Stipulation"). Among other things, Templar and Spitfire agreed to take certain actions conditional upon the successful bidder's designation of the MSC for assumption or rejection. Specifically, if the successful bidder designated the MSC for assumption, Spitfire would file no further documents in the bankruptcy cases and would be paid a cure amount. If the successful bidder designated the MSC for rejection, Spitfire could bring any claim resulting from that rejection.

At the auction on July 10, 2020, Templar selected Presidio as the purchaser of its assets. On July 17, 2020, the Bankruptcy Court approved the sale and issued the Sale

3

Order following a hearing held the day prior. The Sale Order included a provision that Presidio was purchasing Templar's assets free and clear of any interests or obligations, including contracts not designated for assumption ("Free and Clear Provision"). It also included a provision that any interest-holder who did not object to the Sale was deemed to have consented ("Consent Provision"). Spitfire received notice of the hearing and its counsel participated in the hearing, but it did not object to the Sale.

On July 29, 2020, the Bankruptcy Court issued the Confirmation Order. Among other provisions, it included express language opting Spitfire out of third-party releases given to Presidio by claim and interest holders ("Opt-Out Provision"). The provision also provided that Spitfire would not file any additional documents or appeal the Chapter 11 cases beyond filing general unsecured claims.

On September 11, 2020, Spitfire sued Presidio in Texas state court, bringing claims arising out of the MSC's rejection. Presidio removed the case to the United States District Court for the Northern District of Texas and moved to transfer the case to the Bankruptcy Court.

While these motions were pending, Presidio filed a motion with the Bankruptcy Court asking it to enforce its Sale and Confirmation Orders. The Court granted Presidio's motion. It held that it had jurisdiction to enforce its orders and that the "sale order, which was not objected to by Spitfire, effected the transfer of the debtors' assets, free and clear, of claims arising out of" the MSC.

Spitfire filed a motion for reconsideration and sought for the first time to introduce an affidavit from its CEO David Le Norman (the "Affidavit"). The Affidavit stated that

4

Presidio understood that, pursuant to the Opt-Out Provision in the Confirmation Order, Spitfire did not release its claims under the MSC against Presidio. The Bankruptcy Court declined to consider the Affidavit, which the parties agreed did not contain newly available evidence, and it denied the motion for reconsideration. Spitfire appealed to the United States District Court, which affirmed the enforcement order and the denial of the motion for reconsideration. This appeal followed.

## II. Discussion

Spitfire raises two central issues on appeal: it contests the Bankruptcy Court's jurisdiction over the enforcement proceedings, and it contests the Bankruptcy Court's interpretation of its Sale and Confirmation Orders. These arguments lack sufficient merit, and we will affirm.

### a. Bankruptcy Court's Jurisdiction

The District Court had jurisdiction under 28 U.S.C. § 158(a)(1) and we have jurisdiction under 28 U.S.C. § 1291. "In this appeal, we stand in the shoes of the District Court and review the Bankruptcy Court's decision." *In Re LTC Holdings, Inc.*, 10 F.4th 177, 184 (3d Cir. 2021) (citing *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 209 (3d Cir. 2011)). We review the Bankruptcy Court's legal conclusions as to its jurisdiction *de novo*. *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 253 (3d Cir. 2007).

The Bankruptcy Court correctly held that it had core jurisdiction over the enforcement motion.[1] While "[t]he scope of a bankruptcy court's jurisdiction narrows

---

[1] Because the enforcement motion was a core proceeding: (1) mandatory abstention did not apply, and the Bankruptcy Court did not err in declining to abstain, 28 U.S.C.

after the confirmation of a debtor's restructuring plan," the Court continues to have jurisdiction over core and non-core proceedings. *In re Essar Steel Minnesota LLC*, 47 F.4th 193, 194, 197–98 (3d Cir. 2022). A core bankruptcy proceeding includes the "confirmations of plans" and "orders approving the sale of property." 28 U.S.C. § 157(b)(2)(L), (N). The post-Sale and post-Confirmation posture of the enforcement motion did not divest the Bankruptcy Court of jurisdiction because it had jurisdiction to interpret and enforce those prior orders.[2] *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (a bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders."); *In re Essar Steel*, 47 F.4th at 199–200 (bankruptcy court had core jurisdiction to interpret "the discharge injunction order in its own plan and confirmation order" post-confirmation); *In re Allegheny Health Educ. & Rsch. Found.*, 383 F.3d 169, 174–76 (3d Cir. 2004) (post-confirmation matter "was a core proceeding because it required the court to interpret and give effect to its previous sale orders").

### b. Interpretation of the Sale and Confirmation Orders

Spitfire contests the Bankruptcy Court's interpretation of the Sale Order's Free and Clear and Consent Provisions and the Confirmation Order's Opt-Out Provision. We

---

§ 1334(c)(2); *see also Seven Fields*, 505 F.3d at 253–54; and (2) we need not consider whether and to what extent the Court had noncore jurisdiction on the basis that the enforcement order affects the administration of the bankruptcy estate.

[2] Contrary to Spitfire's arguments, *Lone Star Industries, Inc. v. Liberty Mutual Insurance* is inapposite and does not alter this conclusion. 131 B.R. 269, 273 (D. Del. 1991) (holding that a "court should determine *whether any* bankruptcy court should hear a proceeding before it determines *which* bankruptcy court should hear it" (emphasis in original)). Neither *Lone Star* nor any other authority required the Bankruptcy Court to wait for the District Court for the Northern District of Texas to rule on the transfer motion before issuing the Enforcement Order.

exercise *de novo* review over whether a provision in a bankruptcy court's orders is ambiguous, and we review the Bankruptcy Court's interpretation of an ambiguous provision for abuse of discretion. *In Re LTC Holdings, Inc.*, 10 F.4th at 184. "[W]here the plain terms of a court order unambiguously apply, . . . they are entitled to their effect." *Travelers*, 557 U.S. at 150.

### i. The Free and Clear and Consent Provisions

The Sale Order's provisions unambiguously provide that any interest or claim holder that fails to object to the free-and-clear sale consents to it. The Consent Provision also unambiguously states that any entity that did not object to the Sale is deemed to have consented to it and its terms. This language plainly satisfies 11 U.S.C. § 363(f)(2)'s requirement that a "trustee may sell property . . . free and clear of any interest in such property of an entity other than the estate, only if . . . (2) such entity consents."

Spitfire had notice of the terms of the Sale and an opportunity to object. There is no dispute that Spitfire did not object to the Sale Order at the sale hearing. We agree with the Seventh Circuit that "lack of objection (provided of course there is notice) counts as consent" under 11 U.S.C. § 363. *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002). Accordingly, pursuant to the unambiguous terms of the Sale Order, Spitfire was deemed to have consented under § 363(f)(2), and Presidio purchased Templar's assets free and clear of any contractual obligations or real covenants created by the MSC.

### ii. *The Opt-Out Provision*

Spitfire claims that the Opt-Out Provision either (a) incorporated the Stipulation and made Presidio a party to it, or (b) reflected an undocumented agreement with Presidio that preserved Spitfire's claims under the MSC. Neither argument persuades us.

The Opt-Out Provision unambiguously states that the "Stipulation shall be binding on the *parties thereto*." JA1963–64 (emphasis added). Presidio was not a party to the Stipulation, so the Opt-Out Provision did not preserve any entitlement Spitfire may have had against Presidio.

Spitfire's decision to bind itself to filing no further pleadings or documents in accordance with the Stipulation did not relieve it of its obligation to object to the Sale Order's free-and-clear sale of Templar's assets. Indeed, the Stipulation itself provides that Spitfire agreed to refrain from objecting only if the successful bidder designated the MSC for assumption but was not similarly bound if the successful bidder designated the MSC for rejection.

Spitfire's argument that the Opt-Out Provision reflects a separate agreement between Spitfire and Presidio is likewise unavailing. We will not interpret the Opt-Out Provision to comply with the unknown terms of an undocumented agreement. The Bankruptcy Court did not abuse its discretion in declining to consider the Affidavit in support of Spitfire's motion for reconsideration.

While a court "should interpret [an order] 'in such a way as to not render any of its provisions illusory or meaningless," it must also "construe the [order] as a whole, giving effect to all provisions therein." *In re G-I Holdings, Inc.*, 755 F.3d 195, 202 (3d Cir.

8

2014) (internal quotations omitted). The terms of the Plan were an integral part of the Confirmation Order, and the Plan made the Bankruptcy Court's approval of the Sale a condition precedent to the Plan's confirmation. Indeed, the Opt-Out Provision illustrates the interdependence of the two orders by expressly incorporating the terms of the Sale to approve the assumption or rejection of executory contracts in the Plan. The Bankruptcy Court therefore properly interpreted the Opt-Out Provision to ensure both it and the Sale Order's provisions were effective. The Bankruptcy Court's interpretation gave meaning to all relevant provisions by construing the Opt-Out Provision to permit Spitfire to bring against Presidio only those claims unrelated to the Sale, while continuing to give effect to the Sale Order's Free and Clear Provision. Spitfire's assertion that it has no claims against Presidio under this interpretation does not render the provision meaningless.

## III. Conclusion

For the reasons discussed above, we will affirm the District Court's order affirming the Bankruptcy Court's enforcement order and reconsideration order.