**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1295
_____

In re: CONGOLEUM CORPORATION, et al.,
Debtors


BATH IRON WORKS CORPORATION,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:22-cv-00423)
District Judge:  Honorable Madeline Cox Arleo
_____

Argued:  November 15, 2023
Submitted after rehearing June 12, 2025
_____

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, MATEY and CHUNG,
<u>Circuit</u> <u>Judges</u>

(Opinion filed: August 22, 2025)
_____

Ian H. Gershengorn **[ARGUED]**
Illyana A. Green
Matthew Hellman
Jenner & Block
1099 New York Avenue NW
Suite 900
Washington, DC 20001

Michael A. Doornweerd
Catherine L. Steege
Jenner & Block
Suite 4500
353 N Clark Street
Chicago, IL 60654

Lawrence Bluestone
Angelo J. Genova
Genova Burns
494 Broad Street
Newark, NJ 07102

Donald W. Clarke
Daniel M. Stolz
Genova Burns
110 Allen Road
Suite 304
Basking Ridge, NJ 07920

Haley B. Zoffer
Davis Wright Tremaine
350 S Grand Avenue
Suite 2700
Los Angeles, CA 90071

Counsel for Appellant Bath Iron Works Corporation

Daniel B. Butz
Morris Nichols Arsht & Tunnell
18th Floor
1201 N Market Street
Wilmington, DE 19899

Counsel for Amicus Curiae Appellant Six Law Professors

Erin E. Murphy **[ARGUED]**
Clement & Murphy
706 Duke Street
Alexandria, VA 22314

Amanda L. Rauer
David E. Romine
Larry D. Silver
Langsman Stevens Silver & Hollaender
1818 Market Street
Suite 2430
Philadelphia, PA 19103

Russell C. Silberglied
Richards Layton & Finger
One Rodney Square
920 N King Street
Wilmington, DE 19801

Counsel for Appellee Occidental Chemical Corporation

―――――――――

OPINION OF THE COURT

―――――――――

CHAGARES, Chief Judge.

This case arises out of the decades-long bankruptcy proceedings of debtor Congoleum Corporation ("Congoleum" or "Debtor"). One of Congoleum's creditors, Occidental Chemical Corporation ("Occidental"), filed a lawsuit against appellant Bath Iron Works Corporation ("BIW"), Congoleum's former corporate sibling, over certain environmental claims stemming from the operation of a manufacturing facility in Kearny, New Jersey. In response, BIW moved to reopen Congoleum's bankruptcy case and for a declaration that, according to the order confirming Congoleum's plan of reorganization, BIW was not liable for the environmental claims. The Bankruptcy Court reopened the case and held that BIW was not liable for those claims. On appeal, the District Court reversed. BIW then appealed the District Court's reversal.

We conclude that the Bankruptcy Court did not err in reopening Congoleum's bankruptcy case or by holding that Occidental could not recover against BIW for the environmental claims. We will therefore reverse the judgment of the District Court.

I.

Congoleum's various predecessors have operated a flooring business, the Congoleum Flooring Business, in

4

Kearny, New Jersey, since 1886. The Congoleum Flooring Business manufactured products that contained asbestos, and by 2003, nearly one hundred thousand asbestos-related personal injury claims had forced Congoleum into bankruptcy.

Congoleum first filed a bankruptcy petition in 2003. Occidental did not file a proof of claim, but its indemnitor filed a claim and entered a notice of appearance on Occidental's behalf. As part of the 2003 bankruptcy proceedings, Congoleum and one of its insurers, Century Indemnity Company ("Century"), reached a settlement ("Century Settlement") through which Century agreed to buy back its insurance policies from Congoleum in exchange for an injunction barring any future claims under those policies. Proceeds from this and similar settlements were used to help Congoleum emerge from bankruptcy.

Before approving the Century Settlement, the Bankruptcy Court examined whether additional insureds, including BIW, held claims under the Century policy. One of Congoleum's corporate predecessors had briefly owned BIW, which has operated a shipbuilding facility in Maine since 1884, before selling BIW and the Congoleum Flooring Business to different third parties in 1986 as part of an extensive restructuring. As part of the proceedings on the Century Settlement, Congoleum submitted a declaration from its chief financial officer stating that the Debtor was the sole successor in interest to the Congoleum Flooring Business and BIW was not responsible for the liabilities of the Congoleum Flooring Business. The Bankruptcy Court approved the Century Settlement after the motion to approve the settlement and accompanying documents were served on certain creditors.

The District Court eventually withdrew the reference to the Bankruptcy Court. The District Court confirmed Congoleum's plan of reorganization ("Plan") in an order entered in 2010 ("Confirmation Order"). The Plan provided: "Nothing in the Confirmation Order or Plan shall be construed as releasing or relieving any Entity of any liability under any Environmental Law." Appendix ("App.") 284. The Confirmation Order included findings "[i]n support of the Century Settlement and the Century Approval Order," including the BIW Finding, which provided, as relevant: "In support of the Century Settlement and the Century Approval Order, the Court finds that the following Century Additional Named Insureds have no responsibility for any of the liabilities of the Congoleum Flooring Business (as defined in the Century Settlement): . . . Bath Iron Works Corp." App. 200.

In advance of the confirmation hearing, Occidental was served with various documents, including the Plan, the proposed Confirmation Order, notice of the confirmation hearing, and a disclosure statement indicating that the Century Settlement resolved "both asbestos and non-asbestos claims." App. 1161. Occidental did not appear at the confirmation hearing. After the Plan became effective in 2010, the District Court again referred the case to the Bankruptcy Court, which subsequently closed the case.

Seven years later, Congoleum apparently reversed its stance on BIW's responsibility for the liabilities of the Congoleum Flooring Business. While defending against claims related to environmental contamination at the Kearny facility, Congoleum impleaded BIW and asserted that BIW, not Congoleum, was responsible for the environmental contamination. See DVL, Inc. v. Congoleum Corp., No. 17-

6

4261, 2018 WL 4027031, at *2 (D.N.J. Aug. 23, 2018). Occidental filed a similar lawsuit against BIW seeking contribution for the cost of remediating environmental damage resulting from the operations of the Congoleum Flooring Business.

Congoleum filed for bankruptcy a second time in 2020, and a new bankruptcy judge presided over the second bankruptcy case. BIW filed an adversary proceeding against Congoleum in the second bankruptcy case and sought a declaration that Congoleum was bound by the BIW Finding and thus barred from claiming that BIW inherited the Congoleum Flooring Business's liabilities, including its environmental liabilities. The Bankruptcy Court granted BIW's motion for summary judgment and held that, under the BIW Finding, BIW was not responsible for the liabilities of the Congoleum Flooring Business. The Bankruptcy Court also held that the BIW Finding had been "actually litigated" and was necessary to both the Century Settlement and the Confirmation Order. App. 1627. Based on the Bankruptcy Court's ruling, Congoleum agreed in June 2021 to dismiss its claim in the DVL litigation that BIW was responsible for any environmental liabilities arising out of the operation of the Kearny facility.

Shortly thereafter, BIW asked Occidental to dismiss its civil complaint against BIW in light of the Bankruptcy Court's summary judgment order, but Occidental refused. Instead, Occidental filed for summary judgment in August 2021; BIW responded that same month by moving to reopen the 2003 bankruptcy case and for an order holding that, according to the BIW Finding, BIW was not responsible for the Congoleum Flooring Business's liabilities. The 2003 bankruptcy case was

7

subsequently transferred to the same bankruptcy judge who had presided over the 2020 bankruptcy case. Occidental's summary judgment motion was stayed pending resolution of the bankruptcy proceedings.

After the parties were given an opportunity to submit evidence in support of their arguments, the Bankruptcy Court granted the motion to reopen the 2003 bankruptcy case and held that the BIW Finding bound Occidental. The Bankruptcy Court first determined that it could properly reopen the case because it, not the District Court, was best positioned to interpret the BIW Finding. Second, the Bankruptcy Court rejected Occidental's argument that BIW had waited too long to file its motion because it filed promptly after Occidental made clear that it would not agree to dismiss its complaint. Third, it held that the BIW Finding was not an improper third-party release that violated the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., but rather a determination regarding BIW's liability that was necessary to the Century Settlement. The Bankruptcy Court also held that the Confirmation Order had res judicata effect and bound Occidental, which had received notice of and "was a party to the confirmation proceedings." App. 60. The Bankruptcy Court further found that it was "more likely than not that Occidental received adequate notice" of the motion to approve the Century Settlement. App. 46.

On appeal, the District Court reversed. The District Court held that it, not the Bankruptcy Court, was best suited to interpret the Confirmation Order because the Confirmation Order had been issued by a district court judge, and the District Court was already presiding over a separate dispute among

8

Occidental, BIW, and Congoleum regarding environmental contamination at the Kearny facility. It also concluded that the Bankruptcy Court lacked jurisdiction because the motion did not affect the Debtor's estate. The District Court further held that the Bankruptcy Court erred in finding that there was good cause to reopen the bankruptcy case because the Debtor's estate would not be affected, the issues raised in BIW's motion were pending in Occidental's lawsuit against BIW, and the motion was filed more than a decade after the case was closed. The District Court additionally determined that the BIW Finding was a third-party release that violated CERCLA. It also held that the Bankruptcy Court erred as both a matter of law and fact in determining that the Confirmation Order had res judicata effect and bound Occidental because, inter alia, Occidental had not received adequate notice.

BIW timely appealed, and we affirmed the District Court's judgment. After BIW petitioned for rehearing, we granted the petition for panel rehearing and vacated our prior opinion affirming the District Court.

II.

The Bankruptcy Court had jurisdiction over the motion to reopen under 28 U.S.C. § 157(b) because the motion for an order interpreting and enforcing the Confirmation Order was a core bankruptcy proceeding. See In re Essar Steel Minn., LLC, 47 F.4th 193, 199 (3d Cir. 2022) (holding that a post-confirmation request from a third party to interpret and enforce confirmation order was a core proceeding). The District Court had jurisdiction over Occidental's appeal pursuant to 28 U.S.C. § 158(a)(1), and we have jurisdiction over BIW's appeal under 28 U.S.C. §§ 158(d)(1) and 1291.

We apply the same standard of review as the District Court in reviewing the Bankruptcy Court's decision. In re Global Indus. Techs., Inc., 645 F.3d 201, 209 (3d Cir. 2011) (en banc). We review the Bankruptcy Court's factual findings for clear error, its legal conclusions de novo, and its decision to reopen bankruptcy proceedings for abuse of discretion. See id.; In re Lazy Days' RV Ctr. Inc., 724 F.3d 418, 421 (3d Cir. 2013).

## III.

We hold that the Bankruptcy Court properly exercised its jurisdiction and did not abuse its discretion in granting BIW's motion to reopen the case and interpret the Confirmation Order. The Bankruptcy Court had subject matter jurisdiction because the resolution of the dispute regarding the BIW Finding's effect was a core proceeding, and the District Court had not withdrawn the 2010 order of reference to the Bankruptcy Court. The Bankruptcy Court did not err in granting the motion because resolution of the instant dispute required a detailed analysis of that order, and BIW's motion was timely filed.

## A.

We review the Bankruptcy Court's determination that it had subject matter jurisdiction de novo. See In re Zinchiak, 406 F.3d 214, 221–22 (3d Cir. 2005). The Bankruptcy Court correctly determined that it had jurisdiction to interpret the BIW Finding. We have repeatedly held that bankruptcy courts have jurisdiction to interpret their own orders. See, e.g., Lazy Days', 724 F.3d at 423 (citing Zinchiak, 406 F.3d at 224); see also Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151 (2009)

10

(noting that a bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders").

"[T]he scope of bankruptcy jurisdiction diminishes with plan confirmation" but "does not disappear entirely." In re Resorts Int'l, Inc., 372 F.3d 154, 165 (3d Cir. 2004). When a district court refers a matter to bankruptcy court, the bankruptcy court can exercise jurisdiction over proceedings that are either "core proceedings," id. at 163, or non-core proceedings "related to bankruptcy," id. at 164. After a reorganization plan has been confirmed, bankruptcy courts have "related to" jurisdiction only if the claim "affect[s] an integral aspect of the bankruptcy process" such that "there is a close nexus to the bankruptcy plan or proceeding." Id. at 167. No such requirement exists for core proceedings. See Essar Steel, 47 F.4th at 198.

The Bankruptcy Code enumerates a non-exhaustive list of core proceedings, one of which is the "confirmation of plans." 28 U.S.C. § 157(b)(2)(L). In Essar Steel, we held that a "contempt proceeding [that] arose out of [a] previously entered plan and confirmation order . . . was also a core proceeding over which the Bankruptcy Court had jurisdiction." 47 F.4th at 200; see also In re Allegheny Health, Educ. & Rsch. Found., 383 F.3d 169, 174–76 (3d Cir. 2004) (holding that an adversary proceeding in which the bankruptcy court was required to interpret and enforce its own sale orders was a core proceeding).

BIW sought both declaratory relief and enforcement of the BIW Finding in the form of an injunction against

11

Occidental.[1]  The motion to reopen the bankruptcy case and interpret the BIW Finding was thus a core proceeding because BIW asked the Bankruptcy Court to "interpret and enforce" the Confirmation Order.  Essar Steel, 47 F.4th at 199.  Although Occidental argues that a bankruptcy court only has jurisdiction to interpret and enforce a prior order if that order is coercive, we have never embraced such a requirement.

Occidental argues that our many cases holding that a bankruptcy court may reopen proceedings to interpret and enforce its own order are inapposite.[2]  It distinguishes those cases because the bankruptcy court, not the district court, had entered the order that the bankruptcy court was subsequently asked to enforce.  But this distinction is of no significance because the District Court in this case entered the Confirmation

---

[1]  The Bankruptcy Court denied BIW's request for injunctive relief because it determined that injunctive relief was only available in an adversary proceeding under what is now Federal Rule of Bankruptcy Procedure 7001(g).

[2]  The dissent further argues that Lazy Days' and Zinchiak are inapposite because in those cases, reopening was proper to protect the federal interest in bankruptcy uniformity as the alternative forum was state court, whereas in the instant case, both available fora were federal courts.  Our opinions in Lazy Days' and Zinchiak did not limit their holdings to disputes where the only alternative forum is state court, however.  See, e.g., Lazy Days', 724 F.3d at 423; Zinchiak, 406 F.3d at 223–25.  Rather, we emphasized that the bankruptcy courts were "well suited to provide the best interpretation[s]" of the orders at issue.  Zinchiak, 406 F.3d at 224 (cleaned up); see also Lazy Days', 724 F.3d at 423.

Order while sitting in bankruptcy. Additionally, after the case was referred again to the Bankruptcy Court, it was the Bankruptcy Court, not the District Court, that was tasked with adjudicating the case. The motion to reopen was plainly a core bankruptcy proceeding, which included disputes concerning the meaning of the Confirmation Order.

Occidental also argues that a bankruptcy court should only reopen a case to interpret a prior order if the bankruptcy judge presiding over the reopening proceedings is the same judge who issued the prior order. According to Occidental, the presiding bankruptcy judge could not reopen the bankruptcy case to interpret the BIW Finding because he had not been assigned to the case until after the Confirmation Order was entered. We disagree. The identity of the judge cannot be a jurisdictional prerequisite because the administrative needs of courts frequently require reassignment of cases. Cf. United States v. Colon-Munoz, 292 F.3d 18, 22 (1st Cir. 2002) ("Reassignment of civil and criminal cases within a district court occurs regularly, for numerous reasons related to administrative convenience or necessity, and a litigant has no vested right to a particular judge."). Furthermore, the District Court had referred the case to the Bankruptcy Court, not a specific bankruptcy judge.

Because BIW's motion was a core proceeding and was filed after the District Court had reinstated the reference to the Bankruptcy Court, the Bankruptcy Court had jurisdiction over the motion.

13

B.

Having determined that the Bankruptcy Court had jurisdiction to decide the motion, we consider whether the Bankruptcy Court erred in granting the motion to reopen the case. We hold that it did not. Bankruptcy courts may reopen cases "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Because "bankruptcy courts have broad discretion to reopen cases after an estate has been administered," we review a bankruptcy court's decision to reopen proceedings for abuse of discretion. Zinchiak, 406 F.3d at 223 (collecting cases); see also id. at 222. Under an abuse of discretion standard, we will affirm "unless there is a definite and firm conviction that the court below committed a clear error of judgment." Sec'y U.S. Dep't of Lab. v. Nursing Home Care Mgmt. Inc., 128 F.4th 146, 161 (3d Cir. 2025) (quoting Pineda v. Ford Motor Co., 520 F.3d 237, 243 (3d Cir. 2008)).

We have not articulated a comprehensive test to guide the fact-specific inquiry of whether cause exists to reopen bankruptcy proceedings, but we have identified several relevant factors, including whether the motion raises issues determined in a bankruptcy court's prior order, whether reopening would generate additional assets for the debtor's estate, and whether non-bankruptcy courts are available and better-suited to adjudicate the dispute. See Zinchiak, 406 F.3d at 225; see also Lazy Days', 724 F.3d at 423. Our sister Courts of Appeals have also considered "the length of time that the case has been closed." Redmond v. Fifth Third Bank, 624 F.3d 793, 798 (7th Cir. 2010); see also, e.g., In re Case, 937 F.2d 1014, 1018 (5th Cir. 1991); Reid v. Richardson, 304 F.2d 351, 355 (4th Cir. 1962).

14

The Bankruptcy Court correctly determined that it, not the District Court, was best suited to preside over BIW's motion, which required "careful analysis of the history of this bankruptcy case." App. 27. The instant dispute depends substantially on the correct interpretation of the BIW Finding, which the Bankruptcy Court was well-positioned to interpret. See Lazy Days', 724 F.3d at 423. The Bankruptcy Court had presided over a substantially similar dispute in Congoleum's second bankruptcy case, and the District Court had no particular familiarity with the issues raised in BIW's motion. Although Occidental's suit against BIW raised similar issues before the District Court, the motion for summary judgment in that case had been stayed pending resolution of the bankruptcy proceedings.[3]

The Bankruptcy Court properly rejected Occidental's argument that there was no cause to reopen the bankruptcy case because the relief sought by BIW did not affect Congoleum's estate or the administration of its assets. As we explained in Lazy Days', cause to reopen a bankruptcy case can exist where, as here, the bankruptcy court is asked to interpret and enforce a provision in a confirmation order regarding a "[s]ettlement

---

[3] Because a district court always retains the ability to withdraw a reference to a bankruptcy court, we respectfully disagree with our dissenting colleague that our holding permits bankruptcy courts to usurp the Article III authority of district courts. See 28 U.S.C. § 157(d) (allowing a district court to withdraw on its motion a reference "for cause shown"); In re Pruitt, 910 F.2d 1160, 1168 (3d Cir. 1990) (listing factors to consider in determining whether cause exists, including whether the withdrawal discourages forum shopping and expedites bankruptcy proceedings).

15

[a]greement that it had previously confirmed." Lazy Days', 724 F.3d at 423. While impact on the bankruptcy estate or the administration of the debtor's assets are factors that can counsel in favor of granting a motion to reopen, they are not prerequisites under § 350(b). To hold otherwise would render § 350(b)'s "for other cause" provision redundant with the other provisions of that section that permit reopening "to administer assets" or "to accord relief to the debtor."[4] See also Bufkin v. Collins, 145 S. Ct. 728, 741 (2025) (noting that courts strive to avoid readings of statutes that render any provision surplusage).

Finally, the Bankruptcy Court correctly determined that BIW did not unduly delay the filing of its motion to reopen proceedings. In assessing the timeliness of a party's motion to reopen, courts consider the lack of "diligence of the party seeking to reopen and the prejudice to the nonmoving party caused by [any] delay." Redmond, 624 F.3d at 799. We

---

[4] The dissent draws on the statutory history of § 350(b) to conclude that BIW failed to demonstrate that "other cause" existed to reopen the case under § 350(b). Although the Supreme Court has instructed that "pre-code practice may sometimes inform our interpretation of the [Bankruptcy Code's] more 'ambiguous' provisions," Harrington v. Purdue Pharma L. P., 603 U.S. 204, 223 (2024) (quoting RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 649 (2012)), we do not consider § 350(b) to be ambiguous. After considering all of the relevant factors, we determine that our precedent, including Zinchiak and Lazy Days', justifies us holding that cause existed, particularly because the Bankruptcy Court was asked to interpret and enforce an order with which it was familiar and well-equipped to interpret.

16

evaluate the timeliness of the motion to reopen from the time that it became apparent that Occidental "actually decided not to honor" the BIW Finding by rejecting BIW's request to dismiss its lawsuit. Lazy Days', 724 F.3d at 425. By July 2021, Occidental had communicated its intent to continue to litigate its claim against BIW despite an order from the Bankruptcy Court resolving a substantially similar question, and BIW acted diligently in moving to reopen the first bankruptcy case approximately one month later. Such a minor delay did not prejudice Occidental.

At bottom, we cannot say that the Bankruptcy Court's well-reasoned decision to reopen bankruptcy proceedings was a "clear error of judgment." Nursing Home Care Mgmt., 128 F.4th at 161 (quoting Pineda, 520 F.3d at 243). We therefore discern no abuse of discretion.

IV.

The Bankruptcy Court correctly determined that Occidental was bound by the Confirmation Order because it was a creditor who received adequate notice of the Confirmation Order and the Century Settlement. While we have sometimes reviewed the adequacy of notice in bankruptcy proceedings for clear error, our sister Courts of Appeals have varyingly applied both clear error and de novo review in assessing the adequacy of notice in bankruptcy and other contexts. See Chemetron Corp. v. Jones, 72 F.3d 341, 347 (3d Cir. 1995) (applying clear error review); In re Smith, 582 F.3d 767, 778–79 (7th Cir. 2009) (discussing standard of review as to adequacy of notice of bankruptcy petition) (collecting cases). We need not decide whether clear error or de novo

17

review applies here, however, because we would reverse the District Court under either standard.

A.

The Bankruptcy Court did not err in determining that Occidental received actual notice of the Century Settlement and the motion to approve the Century Settlement.[5] Occidental disputes this determination and claims that it did not receive adequate notice. It relies on an affidavit from its document custodian, who stated that the papers from the motion to approve the Century Settlement are not contained in the nine boxes of papers that Occidental retained from Congoleum's first bankruptcy case. But the custodian's affidavit included no explanation of Occidental's document retention policies or any statement tending to support an inference that all of the documents from the first Congoleum bankruptcy that were served on Occidental were contained in those nine boxes.

Occidental also points to the fact that the certification of service accompanying the motion to approve the Century

---

[5] The Bankruptcy Court found "that it is more likely than not that Occidental received adequate notice," although it noted that the mixed evidence in the record did not support a "conclusive finding." App. 46. Occidental did not argue that a standard of evidence other than the usual preponderance of the evidence standard applied, nor did it assert that a "conclusive" finding was required either in its appeal to the District Court or in the instant appeal. Because there is no dispute over the applicable standard of evidence, we assume without deciding that a preponderance of the evidence standard applies.

18

Settlement stated that the notice of hearing, motion, and settlement agreement attached to the motion were served only on the e-mail service list, which did not include Occidental. That statement is contradicted by the Debtor's application for approval of the Century Settlement, which indicated that notice had been provided to the master service list and core service list, both of which included Occidental. Furthermore, Century's counsel represented at the hearing on the Century Settlement that it had given "notice to every entity" and that the notice was "published in the Unite[d] States, in Europe, [and] in Asia" and "mailed to the Secretaries of State" in the states where several entities were incorporated, clearly indicating that service was made beyond mere e-mail. App. 1040–41. Century additionally verified that it published the notice of hearing in USA Today. Occidental also does not dispute that the motion papers were served on Andrews Kurth, LLP, which appeared on behalf of Occidental's indemnitor and had been retained by Occidental "for certain purposes." App. 48.

Taken as a whole, the record establishes by a preponderance of the evidence that Occidental was served with the motion for approval of the Century Settlement and the Century Settlement.

B.

Occidental also had adequate notice of the Confirmation Order and BIW Finding. Occidental concedes that, as Congoleum's creditor, it received notice of the Plan, the

19

proposed Confirmation Order, and the confirmation hearing.[6] It also received a copy of a disclosure statement indicating that the Century Settlement may affect creditors' rights. The Supreme Court has made clear that a creditor's due process right to adequate notice is "more than satisfied" when the creditor "received *actual* notice of the filing and contents of [the debtor's] plan." United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 272 (2010).[7]

Occidental contends that receipt of all of these documents was insufficient because the BIW Finding was not "conspicuous[.]" Occidental Br. 48. But due process requires

---

[6] Although Occidental now contends that it was never served with the proposed Confirmation Order, it conceded before the Bankruptcy Court that "Occidental received notice of the Confirmation Hearing and the proposed 2010 Confirmation Order." App. 1859.

[7] Occidental cites an out-of-circuit case, In re Bozeman, 57 F.4th 895 (11th Cir. 2023), in an attempt to distinguish Espinosa as limited to motions for post-judgment relief brought under Federal Rule of Civil Procedure 60(b)(4). We are not persuaded. Although the Supreme Court in Espinosa "express[ed] no view" on whether the petitioner was entitled to relief under "other provisions of the Bankruptcy Rules," 599 U.S. at 269 n.8, it explained that, on constitutional grounds, actual notice satisfies a creditor's due process right to notice, id. at 272. See also In re Le Centre on Fourth, LLC, 17 F.4th 1326, 1335–36 (11th Cir. 2021) (applying Espinosa's due process holding outside of the Rule 60(b)(4) context); Bozeman, 57 F.4th at 912 n.14 (discussing Espinosa and Le Centre).

20

only "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV, 209 F.3d 252, 265 (3d Cir. 2000) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314–15 (1950)). It does not require that a debtor go out of its way to identify all items of particular interest to each creditor, especially when the creditor is a sophisticated entity like Occidental.

The Plan and related documents provided to Occidental, especially the copy of the proposed Confirmation Order, were sufficient to notify it that its interests might be implicated by the Confirmation Order. A review of the draft Confirmation Order, which included the BIW Finding, would have alerted Occidental to the fact that the Century Settlement included a determination of BIW's liability. Furthermore, the disclosure statement explained that the Century Settlement "resolves coverage obligations under certain policies of insurance under which Congoleum is an insured with respect to both asbestos and non-asbestos claims" and directed creditors to review the papers accompanying the motion to approve the Century Settlement that were on file with the Bankruptcy Court for more information. App. 1161.

Occidental argues that these documents could not provide adequate notice because the Plan's statement that nothing in the Plan or Confirmation Order "releas[ed] or reliev[ed] any Entity of any liability under any Environmental Law" was misleading. Occidental Br. 21 (quoting Plan § 11.9). That statement is not misleading — as discussed infra Part V, the BIW Finding was not a release of existing liability, but a

21

determination that BIW was never responsible for the Congoleum Flooring Business's liabilities.

Occidental also received notice of the confirmation hearing. Had Occidental attended, it would have heard discussion of insurance settlements regarding policies covering environmental claims, and Occidental could have objected to the entry of the BIW Finding. See Davis v. Hutchins, 321 F.3d 641, 646 (7th Cir. 2003) (holding that there was no due process violation where an appellant "simply did not attend" the hearing about which it was notified).

In sum, Occidental's due process rights were "more than satisfied," Espinosa, 559 U.S. at 272, because it was provided notice of the Century Settlement and motion to approve that settlement; the proposed Confirmation Order, which contained the BIW Finding; a disclosure statement that identified the Century Settlement; and notice of the confirmation hearing, at which the insurance settlements were discussed.

V.

The Bankruptcy Court correctly interpreted the Confirmation Order as barring Occidental's claims against BIW. We review de novo the bankruptcy court's "application of legal principles to an unambiguous provision" and review its "interpretation of an ambiguous provision . . . for abuse of discretion." In re LTC Holdings, Inc., 10 F.4th 177, 184 (3d Cir. 2021); see also In re Shenango Grp. Inc., 501 F.3d 338, 346 (3d Cir. 2007).

## A.

The BIW Finding clearly provides that various additional insureds, including BIW, "have no responsibility for any of the liabilities of the Congoleum Flooring Business." App. 200. Occidental argues that the BIW Finding does not apply to the Congoleum Flooring Business's environmental liabilities, but that reading is contradicted by the BIW Finding's plain text.

Occidental attempts to construe the BIW Finding as a statement regarding BIW's responsibility for only the Debtor's liability, but the BIW Finding contains no such limitation. Rather, it refers broadly to "any of" the Congoleum Flooring Business's liabilities. Id.

Occidental next argues that the BIW Finding could not have encompassed the Congoleum Flooring Business's environmental liabilities because section 11.9 of the Plan provides that "[n]othing in the Confirmation Order of Plan shall be construed as releasing or relieving any Entity of any liability under any Environmental Law." App. 284. As discussed infra Part V.B, this statement is consistent with the determination in the BIW Finding that BIW was never responsible for the Congoleum Flooring Business's environmental liabilities. But even if there were a conflict, the Confirmation Order provides that, in the event of "any direct conflict between the terms of the Plan . . . and the terms of this Confirmation Order, the terms of the Confirmation Order shall control." App. 212. Accordingly, we decline to read the Plan as a limitation on the BIW Finding in the Confirmation Order. Finally, Occidental claims that BIW is responsible for the liabilities of the Congoleum Flooring Business because the

23

Century Settlement concerned only those liabilities of the Congoleum Flooring Business liabilities inherited by the Debtor, not BIW. But Occidental never raised this argument before the Bankruptcy Court, and we decline to consider this forfeited argument now.[8] See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 147 (3d Cir. 2017) (noting that a party forfeits an argument by failing to raise it in the initial proceedings).

B.

The Bankruptcy Court also correctly rejected Occidental's argument that interpreting the BIW Finding to apply to Occidental's environmental claims against BIW renders the BIW Finding a third-party release in violation of CERCLA. The BIW Finding is not a third-party release but rather a determination that BIW was never responsible for the Congoleum Flooring Business's liabilities.

Occidental argues that the BIW Finding does not refer to BIW's liability prior to the entry of the Century Settlement because the BIW Finding uses the present tense and does not say, for example, that BIW "never had" responsibility for the Congoleum Flooring Business's liabilities. Occidental Br. 51.

---

[8] Although Occidental argues it did not forfeit this argument because BIW's motion to reopen never asserted that the Debtor was solely responsible for the entirety of Congoleum Flooring Business's liabilities, BIW repeatedly argued before the Bankruptcy Court that (1) the Debtor, not BIW, inherited all of the liabilities of the flooring business operated in Kearny and (2) that fact was memorialized in the Century Settlement and BIW Finding.

24

Reading the BIW Finding in the context of the broader Confirmation Order and Plan, however, it is clear that the BIW Finding was a determination that BIW had no liability, not a release of existing liability. Where the Plan effectuated a release of existing liability, it did so expressly. The BIW Finding never uses the word "release" or otherwise indicates that it is a release of existing liability.[9] The Plan also explicitly provides that "[n]o third party releases are being granted pursuant to the Plan nor are the Plan Proponents seeking approval of any such third-party releases, except as set forth specifically in the Plan." App. 283.

We must enforce the Confirmation Order's plain, unambiguous meaning: BIW inherited none of the Congoleum Flooring Business's liabilities. See Travelers Indem., 557 U.S. at 150 (noting that "a court should enforce a court order . . . according to its unambiguous terms").

## VI.

The doctrine of res judicata precludes Occidental's collateral attacks on the BIW Finding. Occidental argues that the BIW Finding could not have encompassed its environmental claims against BIW because the Bankruptcy Court would have lacked subject matter jurisdiction to enter such a finding or approve the Century Settlement. We

---

[9]    Because the BIW Finding unambiguously provides that BIW holds no responsibility for the liabilities of the Congoleum Flooring Business, we need not address Occidental's factual arguments against that interpretation, including that the BIW Finding was not intended to provide adequate protection to BIW and was unnecessary to the Plan.

25

disagree. In addition, Occidental failed to raise these issues during the 2003 bankruptcy proceedings, and it may not do so now.

A.

Res judicata bars a party from relitigating a claim if the following requirements are met: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." Davis v. Wells Fargo, 824 F.3d 333, 341 (3d Cir. 2016) (quoting Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991)); see also In re Aquilino, 135 F.4th 119, 132 n.11 (3d Cir. 2025) (noting that "the normal rules of res judicata . . . apply to the decisions of bankruptcy courts" (cleaned up)). Accordingly, no party may "relitigat[e] issues that were or could have been raised in" an action resulting in "a final judgment on the merits of the action." Allen v. McCurry, 449 U.S. 90, 94 (1980). "Our review of an application of res judicata is plenary." Elkadrawy v. Vanguard Grp., Inc., 584 F.3d 169, 172 (3d Cir. 2009).

As relevant to this appeal,[10] the Bankruptcy Court held the doctrine of res judicata barred Occidental from relitigating the issue of BIW's responsibility for the Congoleum Flooring

---

[10] The Bankruptcy Court also held that Occidental was collaterally estopped from relitigating the issue of BIW's liability, and the District Court reversed. Because we hold that the related doctrine of res judicata bars Occidental from relitigating the issue of BIW's liability, we need not decide whether Occidental was also collaterally estopped from doing so.

26

Business's environmental liabilities because, <u>inter</u> <u>alia</u>, Occidental "was a party to the confirmation proceedings," and thus "both the confirmation proceedings and the Occidental Lawsuit involve[d] the same parties." App. 60. The District Court reversed because Occidental "did not have a full and fair opportunity to litigate the issue of BIW's liability in the First Congoleum Bankruptcy" and because the record was "not sufficiently clear" to establish that the BIW Finding was "a final judgment on the merits involving the same parties as in the Occidental Lawsuit" or that the BIW Finding concerned the same cause of action underlying Occidental's claim against BIW.[11] App. 12.

---

[11] Occidental argues that BIW waived any argument that the doctrine of <u>res</u> <u>judicata</u> applies because "BIW fails to address" the District Court's holding that the BIW Finding did not bind Occidental as it did not receive adequate notice and the issue of BIW's liability was not actually litigated. Arguments regarding issue preservation based on an inadvertent omission are properly analyzed under the doctrine of forfeiture rather than waiver, which concerns the intentional abandonment of a known right. <u>See</u> <u>Barna</u>, 877 F.3d at 148 (defining waiver and forfeiture). BIW's opening brief, however, asserts that the BIW Finding binds Occidental under 18 U.S.C. § 1141, which codifies the finality principle of <u>res</u> <u>judicata</u> in the bankruptcy context. <u>See</u> <u>In re LaHaye</u>, 17 F.4th 513, 519 n.3 (5th Cir. 2021) (summarizing relationship between <u>res</u> <u>judicata</u> and § 1141). BIW further argues that the District Court erred in determining that the BIW Finding was not a final order binding on Occidental because it wrongly concluded that (1) Occidental received inadequate notice of the BIW Finding, (2) Occidental was not party to the bankruptcy case, and (3) the bankruptcy case did not finally determine the

Occidental was a party to the bankruptcy proceedings and had an opportunity to litigate the BIW Finding, which was a final judgment. A plan of reorganization and the accompanying confirmation order are final orders binding on all creditors. See In re Smith, 102 F.4th 643, 651 (3d Cir. 2024); see also 11 U.S.C. § 1141(a) (noting that "the provisions of a confirmed plan bind . . . any creditor").[12] We have explained that the application of res judicata to confirmation orders occupies a position of "high importance in the

same issues raised in Occidental's lawsuit against BIW. We are satisfied that BIW's res judicata argument was preserved and not forfeited, but even if it were forfeited, we would still consider the argument because it concerns a question of law that was fully litigated, and no party would be "unfairly surprised by judicial consideration of the issue." Barna, 877 F.3d at 148.

[12] For these same reasons, we reject Occidental's arguments that the Plan does not bind it under 11 U.S.C. § 1141. Occidental argues that the "logic" of § 1141 does not apply because Occidental made no filings in the bankruptcy case and did not receive a ballot to vote on the Plan, but nothing in the text of § 1141 limits its application to voting creditors. Occidental Br. 46. Rather, § 1141(a) broadly provides that a confirmation plan binds "any creditor." See also Harrington, 603 U.S. at 214 ("Once the bankruptcy court issues an order confirming the plan, that document binds the debtor and its creditors going forward—even those who did not assent to the plan."). Because we determine that the Confirmation Order binds Occidental under the doctrine of res judicata, we need not address Occidental's argument that is not bound by the Confirmation Order under § 1141.

28

bankruptcy context" because all parties must be able to rely on a confirmation order without worry that the order is subject to change following post-confirmation challenges by dissatisfied creditors. Smith, 102 F.4th at 651 n.14; see also id. at 651.

Occidental does not deny that it was a creditor but contends that it was not a party to the proceedings because it "litigated nothing at all in these Chapter 11 Cases."[13] Occidental Br. 43. As discussed supra Part IV.B, Occidental had notice of the proceedings on both the Century Settlement and Confirmation Order. Occidental's lack of participation is irrelevant; "a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation." In re Szostek, 886 F.2d 1405, 1408 (3d Cir. 1989); see also In re Arctic Glacier Int'l, Inc., 901 F.3d 162, 166 (3d Cir. 2018) (noting that a confirmation order "is res judicata" and "bars all challenges to the plan that could have been raised") (collecting cases). Allowing a creditor like Occidental to levy challenges to the Confirmation Order years after it was entered would erode the finality of bankruptcy orders, on which "debtors, creditors, and third parties are entitled to rely," and would lead to uncertainty both after confirmation and during the process of negotiating settlements during bankruptcy proceedings. In re Thorpe Insulation Co., 677 F.3d 869, 880 (9th Cir. 2012).

The bankruptcy proceedings that resulted in the BIW Finding resolved the same issues raised in Occidental's lawsuit

---

[13] Occidental has abandoned its previous argument that it was not a creditor. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993) (noting that a party abandons a claim by failing to pursue it on appeal).

29

against BIW. While courts consider the "unique circumstances" of bankruptcy and the fact that "any number of adversary proceedings, contested matters, and claims" may be litigated in bankruptcy, E. Mins. & Chems. Co. v. Mahan, 225 F.3d 330, 337 (3d Cir. 2000), a claim is nevertheless barred when it has an "essential similarity" to a claim brought in bankruptcy, id. at 338 n.14. In evaluating the similarity of a claim, we consider whether "the factual underpinnings, theory of the case, and relief sought . . . are so close to a claim actually litigated that it would be unreasonable not to have brought them both at the same time in the bankruptcy forum." Id. at 337. Occidental's suit against BIW raises the same issue addressed by the BIW Finding: whether BIW inherited the liabilities of the Congoleum Flooring Business. The District Court accordingly erred in holding that the record did not establish that the Occidental lawsuit lacked an "essential similarity" to the issues underlying the BIW Finding. Id. at 338 n.14.

Occidental was a creditor in the bankruptcy proceedings, and those proceedings resulted in the Confirmation Order, which was a final judgment on the merits that resolved the same dispute that is central to Occidental's claims against BIW. The BIW Finding thus binds Occidental and has res judicata effect.

B.

Lastly, Occidental argues for the first time on appeal that, to the extent that the BIW Finding extended to Occidental's environmental claims, the BIW Finding was an impermissible advisory opinion, and the Bankruptcy Court lacked jurisdiction to determine the liability between non-

30

debtors in a hypothetical future dispute. It is axiomatic that "Article III of the Constitution restricts the power of federal courts to 'Cases' and 'Controversies.'" Chafin v. Chafin, 568 U.S. 165, 171 (2013). Federal courts accordingly lack jurisdiction to "decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts." Id. at 172 (cleaned up). Therefore, we must ensure the existence of subject matter jurisdiction through every stage of litigation. See id. But after litigation concludes and an order becomes final, any party that was "given a fair chance to challenge the Bankruptcy Court's subject-matter jurisdiction," either when that order was entered or on direct appeal, cannot avoid enforcement by disputing the Bankruptcy Court's subject matter jurisdiction. Travelers Indem., 557 U.S. at 153.

As discussed supra Part IV, Occidental was given a fair opportunity to challenge the Confirmation Order and the Century Settlement before the Bankruptcy Court entered the order approving the settlement. Occidental's argument regarding the lack of subject matter jurisdiction to enter the order approving the Century Settlement and the Confirmation Order could have been made years ago, either in an objection to or on direct appeal of those orders. But even if Occidental's challenge to the Bankruptcy Court's subject matter jurisdiction were timely, it would not provide a basis to reverse the Bankruptcy Court's decision. The BIW Finding was not an advisory opinion because it was the result of a live controversy regarding the liabilities of BIW and the insurance companies. See Lazy Days', 724 F.3d at 421 (holding that a bankruptcy court's decision ordering a landlord to adhere to its prior decision invalidating the anti-assignment provision of the debtor's land lease was not an advisory opinion). The

31

Bankruptcy Court had jurisdiction to enter the BIW Finding, and that order now precludes Occidental's claim against BIW.

*　　*　　*　　*　　*

The Bankruptcy Court did not err in exercising its jurisdiction to reopen the bankruptcy case because it was asked to interpret and enforce the Confirmation Order, which was entered by a court sitting in bankruptcy. Because the BIW Finding conclusively determined that BIW did not inherit the liabilities of the Congoleum Flooring Business and was a final order binding Occidental, which had notice of the confirmation and Century Settlement proceedings, the Bankruptcy Court also did not err in holding that the BIW Finding barred Occidental's claims against BIW.

## VII.

For the foregoing reasons, we will reverse the judgment of the District Court.

MATEY, *Circuit Judge*, dissenting.

A dissatisfied litigant crafted a creative path past proceedings pending before a District Court, hoping a new referee would bring new fortunes. We disapproved the tactic, but reconsidered when a few academics warned the sky was poised to fall. It has not, but still the panel changes course and empowers a congressionally created adjudicative body to wrest jurisdiction from an Article III court. Because Congress created the bankruptcy forum to assist federal judges, not usurp the Article III prerogative, I respectfully dissent.

## I.

Section 350(b) allows a bankruptcy case to be reopened "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The catchall "for other cause" is best read as a limited authority to reexamine old estates consistent with the core principles of bankruptcy, not a general transfer of the judicial power to decide tangential cases and controversies. Both text and history explain why.

Start with the text, and the familiar instruction that a trailing catchall must be read in concert with the preceding specifics. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 512 (2018); 26 American and English Encyclopedia of Law 520, 609–10 (David S. Garland & Lucius P. McGehee eds., 2d ed. 1904). The first two grounds for reopening are hallmarks of bankruptcy: "maximiz[ing] the property available to creditors," *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268, 272 (2024), and "relieving the honest debtor from oppressive indebtedness," *Wright v. Union Cent. Life Ins.*, 304

U.S. 502, 514 (1938). Anything captured by the catchall must likewise serve a central tenet of the Bankruptcy Code.

Because Congress did not "write 'on a clean slate'" when it enacted the 1978 Bankruptcy Code, history provides the context that explains the scope of this power. *Hall v. United States*, 566 U.S. 506, 523 (2012) (quoting *Dewsnup v. Timm*, 502 U.S. 410, 419 (1992)). That earlier practice must "inform our interpretation of the code's more 'ambiguous' provisions." *Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 223 (2024) (quoting *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 649 (2012)). The Constitution grants Congress the authority "[t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States," U.S. Const. art. 1, § 8, cl. 4, but for our first century, the exercise of that power was largely sporadic.[1] That changed in 1898 when Congress passed the first comprehensive, permanent set of bankruptcy laws vesting jurisdiction in the federal district courts siting as "courts of bankruptcy."[2] Bankruptcy Act of 1898, ch. 541, § 2, 30 Stat. 544, 545 (amended 1938).

---

[1] Bankruptcy Act of 1800, ch. 19, 2 Stat. 19, *repealed by*, Act of Dec. 19, 1803, ch. 6, 2 Stat. 248; Bankruptcy Act of 1841, ch. 9, 5 Stat. 440, *repealed by*, Act of Mar. 3, 1843, ch. 82, 5 Stat. 614; Bankruptcy Act of 1867, ch. 176, 14 Stat. 517, *repealed by*, Act of June 7, 1878, ch. 160, 20 Stat 99.

[2] The Act also created bankruptcy "referee[s]." Bankruptcy Act of 1898 § 33, 30 Stat. at 555. These officials, appointed by the federal district courts, *id.* § 34, 30 Stat. at 555, exercised "the bulk of the judicial and administrative work" related to the bankruptcy, Charles Jordan Tabb, The History of the Bankruptcy Laws in the United States, 3 Am. Bankr. Inst.

The 1898 Act allowed district courts sitting in bankruptcy to "reopen [closed estates] whenever it appears they were closed before being fully administered." *Id.* § 2(8), 30 Stat. at 546. Reopening often occurred when a debtor had concealed assets, *see, e.g.*, *In re Goldman*, 129 F. 212, 212 (2d Cir. 1904) (per curiam), but the decision was always "addressed to the sound discretion of the District Court," *In re Schreiber*, 23 F.2d 428, 430 (2d Cir. 1928).

Amendments in 1938 expanded this power, permitting district courts sitting in bankruptcy to "reopen estates for cause shown." Bankruptcy Act of 1938, ch. 575, § 2a(8), 52 Stat. 840, 843 (repealed 1978). Contemporary judicial decisions understood the 1938 Act to have "undoubtedly . . . widened" the power to reopen a bankruptcy estate, *In re Ostermayer*, 74 F. Supp. 803, 804 (D.N.J. 1947), and "to give greater power to the [district] court in reopening estates," *In re Zimmer*, 63 F. Supp. 488, 490 (S.D. Cal. 1945). But broader did not mean boundless,[3] and interpretations soon agreed that cause existed when the bankruptcy estate had not been fully administered— much the same circumstances under which reopening was

---

L. Rev. 5, 25 (1995), "subject always to a review by the" district court, Bankruptcy Act of 1898 § 38, 30 Stat. at 555.

[3] *See Ostermayer*, 74 F. Supp. at 804 ("The words 'for cause shown' are not defined in the act but obviously the discretion so vested in the court should be exercised only where extraordinary conditions are shown calling for such relief."); *Hull v. Powell*, 309 F.2d 3, 4 (9th Cir. 1962) ("The power thus conferred is broad, but not unlimited. Its exercise is conditioned upon a showing that the public interest and the purposes of the Bankruptcy Act will be served by further administration of the estate.").

3

authorized under the 1898 Act.[4] So courts allowed reopening when a debtor concealed assets in the bankruptcy or the assets were previously unreachable.[5]

The 1973 Federal Bankruptcy Rules then added the "other good cause" language later codified in 1978. *See* Bankr. R. 515 (1973) ("A case may be reopened . . . to administer assets, to accord relief to the bankrupt, or for other good cause."). The reformulation had a narrow purpose:

> This rule is an elaboration of the provisions of [the 1938] Act authorizing estates to be reopened for cause shown. Although this provision was amended in 1938 to clarify the authority of the court to reopen for purposes other than the administration of newly discovered assets, the courts have been reluctant to sustain exercises of this authority for the benefit of the bankrupt. The grant of an application to reopen under this rule remains a matter of discretion of the court, but relief to the bankrupt is explicitly recognized as a proper cause for the reopening.

---

[4] *See, e.g.*, *Tuffy v. Nichols*, 120 F.2d 906, 908 (2d Cir. 1941) ("[R]eopening the estate to recover previously unadministered assets was certainly the 'cause shown' required by Bankruptcy Act . . . .").

[5] *See, e.g.*, *Saper v. Viviani*, 226 F.2d 608, 609–11 (2d Cir. 1955) (concealed); *In re Reid*, 198 F. Supp. 689, 692 (W.D. Va. 1961) (previously unreachable), *aff'd sub nom.*, *Reid v. Richardson*, 304 F.2d 351 (4th Cir. 1962).

*Id.* advisory committee's note (citations omitted). In other words, the drafters saw no need to expand the reopening power or remove its connection to administration of the bankruptcy estate, acting narrowly to clarify that reopening was proper to provide relief to the debtor. And that language was imported into the present Bankruptcy Code through the Bankruptcy Reform Act of 1978, which incorporated the standard of the 1938 Amendments, as clarified by the 1973 Rules.[6] Pub. L. No. 95-598 § 350(b), 92 Stat. 2549, 2569. In sum, section 350(b) incorporates the unbroken understanding of a restricted reopening power recognized for nearly ninety years.

## II.

Our precedent does not disturb this conclusion. When we have affirmed bankruptcy reopening for other cause under section 350(b), we have done so to ensure the active state court actions did not intrude on federal bankruptcy cases.[7] *See In re*

---

[6] *See In re Montney*, 17 B.R. 353, 355 (Bankr. E.D. Mich. 1982) (discussing the relevant history and concluding "[p]rior law has not been changed by the enactment of section 350"); *see also Hawkins v. Landmark Fin. Co.*, 727 F.2d 324, 326 (4th Cir. 1984).

[7] This practice of protecting federal jurisdiction from parallel state actions is hardly novel. *See, e.g.*, *Loc. Loan Co. v. Hunt*, 292 U.S. 234, 241 (1934) (reopening a bankruptcy estate for the debtor to avoid a "long and expensive course of litigation" in state court). But because these cases typically involved a debtor's request for relief, which courts disfavored before Rule 515, they were rarely granted. *In re Barber*, 140 F.2d 727, 728 (3d Cir. 1944); *Ciavarella v. Salituri*, 153 F.2d 343, 344 (2d Cir. 1946). When Rule 515 clarified that

*Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 421–23 (3d Cir. 2013); *In re Zinchiak*, 406 F.3d 214, 220–21, 223–25 (3d Cir. 2005).[8] This protectionist pose crowded out state suits to secure the federal interest in maintaining bankruptcy uniformity,[9] itself a constitutional command. So by preventing state courts from encroaching on bankruptcy law, these applications of section 350(b) accorded with both its text and practice. But those cases cannot be read to countenance a bankruptcy judge wresting jurisdiction from an Article III court competent and capable of interpreting an order collateral to the bankruptcy.

Nor do these decisions support the majority's position that the Bankruptcy Court was "best suited" to consider the motion to reopen. Majority Op. at 14. While we have said a bankruptcy court is "well suited to provide the best interpretation of its own order," *Lazy Days'*, 724 F.3d at 423 (quoting *Zinchiak*, 406 F.3d at 224), that was a comparison to state courts understandably unfamiliar with federal regulatory

---

reopening can also benefit the debtor, cases extending this protection principle to state debt-enforcement actions followed. *E.g.*, *In re Rosinski*, 759 F.2d 539, 541–42 (6th Cir. 1985).

[8] *Zinchiak* also involved a petition with "the potential to generate assets for the benefit of unsecured creditors of the Debtor's estate," 406 F.3d at 224, one of the enumerated bases for reopening under section 350(b).

[9] By doing so we respected the central "purpose to establish uniformity," which "necessarily excludes state regulation." *Int'l Shoe Co. v. Pinkus*, 278 U.S. 261, 265 (1929). While that is certainly "other cause," it is by no means the only cause under which reopening is permitted. But that does not mean "other cause" knows no other bounds.

law.[10] But that does not embrace a broad "bankruptcy exceptionalism" that will "tilt in favor of those more adept at maneuvering within the bankruptcy system, at the expense of the less powerful, able, or sophisticated." Jonathan M. Seymour, *Against Bankruptcy Exceptionalism*, 89 U. Chi. L. Rev. 1925, 1930 (2022). Here, the Confirmation Order was entered by the District Court exercising its supervisory authority over the bankruptcy judge following a series of errors, leaving the trial judge well-suited to confirm its meaning. The Bankruptcy Court simply does not possess a preternatural ability for "careful analysis of the history of this bankruptcy case." Majority Op. at 14 (quoting App. 27). Respectfully, "careful analysis" is exactly what the District Court did here, with diligence that we owe deference.[11]

---

[10] *Lazy Days'*, 724 F.3d at 421; *Zinchiak*, 406 F.3d at 220–21.

[11] The majority sees an out in 28 U.S.C. § 157(d). But query *who* could have withdrawn the referral to the Bankruptcy Court. A bit of history sets the stage, beginning with a standing order of the District of New Jersey referring all bankruptcy petitions to a bankruptcy judge, which is exactly what happened when Congoleum petitioned for bankruptcy in 2003. That resulted in a 2009 appeal to the District Court handled by Judge Pisano, who withdrew the referral and issued the Confirmation Order. Judge Pisano then referred the matter back to the Bankruptcy Court, which entered a final decree and closed the case in 2011. Because the case was closed, it was never reassigned from Judge Pisano. In August 2021, Bath Iron Works filed a motion to reopen the Congoleum bankruptcy. The Bankruptcy Court granted the motion to reopen, and that decision was appealed to the District Court. But Judge Pisano

* * *

Today's result stymies the District Court's constitutional and statutory authority while commanding future judges to make way for the "experts." Congress did not promote such protectionism from Article III officials and "the word 'cause' is too weak a reed upon which to rest so weighty a power." *Czyewski v. Jevic Holding Corp.*, 580 U.S. 451, 466 (2017). For that reason, I respectfully dissent.

---

had passed away in 2021, so the appeal was assigned to Judge Arleo.

While I agree section 157(d) allows a district judge to withdraw a referral, there was no district judge to act. When Bath Iron Works filed the motion to reopen, Judge Pisano was still assigned to the case at the District Court, despite his death earlier that year. Judge Arleo, who currently oversees the case at the District Court, was not assigned until the appeal was taken from the Bankruptcy Court. By then the window to withdraw the referral was welded shut.